**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1264
_____

IN RE:  IN THE MATTER OF THE GRAND
JURY EMPANELED ON MAY 9, 2014

John Doe; ABC Entity,

<u>Appellants</u>

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-14-mc-00062)
District Judge: Hon. Esther Salas
_____

Argued April 21, 2015

BEFORE: FISHER, CHAGARES AND COWEN,  <u>Circuit
Judges</u>

(Filed: May 15, 2015)
_____

OPINION
_____

Damian P. Conforti, Esq. (Argued)
Podvey, Meanor, Catenacci, Hildner,
Cocoziello & Chattman
One Riverfront Plaza
Suite 800
Newark, NJ 07102

Nancy A. Del Pizzo, Esq.
Rivkin Radler
21 Main Street, Court Plaza South
First Floor – West Wing, Suite 158
Hackensack, NJ 07601

      Counsel for Appellants

Mark E. Coyne, Esq.
John F. Romano, Esq. (Argued)
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

      Counsel for Appellee

COWEN, <u>Circuit Judge</u>.

John Doe, D.O., a medical doctor, and ABC Entity, (the "Corporation" or "Medical Practice"), (together, "Appellants"), appeal the District Court's order holding the Corporation in contempt for noncompliance with a grand jury

2

subpoena directing its custodian of records to produce certain documents. Doe claims that despite serving as the Corporation's custodian, as the sole owner and employee, he is entitled to refuse to comply with the subpoena in accordance with his Fifth Amendment privilege against self-incrimination. Appellants also argue that compliance is unnecessary because the subpoena is impermissibly overbroad and should be quashed. For the reasons discussed below, we will affirm the District Court's order.

## I.

In 1973, Doe, the only medical practitioner in his practice, organized his medical practice as ABC Entity, a "professional association," which is a type of corporation doctors are permitted to form under New Jersey law. Since its creation, Doe has operated his practice through that corporate entity. As of October 2011, the Corporation employed a staff of six.

The original target entity (the "OTE") was a clinical blood laboratory in New Jersey. From 2006 through 2013, this entity used various methods to bribe numerous physicians to refer their patients to it for blood testing. The Government alleges that Doe entered into an illicit agreement with the OTE, whereby it paid him monetary bribes in exchange for referring his patients to it for blood testing.

In April 2013, a grand jury subpoena was served on the custodian of records for the Corporation, directing it to turn over various documents, including records of patients referred

to the OTE, lease and consulting agreements, checks received by it for reasons other than patient treatment, correspondence regarding its use of the OTE as a blood-testing provider, correspondence with specified individuals and entities, and basic corporate records. In December of 2013, Doe, as custodian, moved to quash the subpoena. The Government opposed the motion, and the District Court denied the motion to quash, concluding (1) that Supreme Court precedent indicated that corporations may not assert a Fifth Amendment privilege, and (2) that the subpoena was not overbroad in violation of the Fourth Amendment.

Following the District Court's denial of his request to quash, Doe refused to let his corporation comply and the Government moved to compel it to do so. The District Court granted that motion. The Corporation persisted in its refusal to comply and the District Court found it in civil contempt and ordered it to pay a $2,000 per day sanction. The Court, however, agreed to stay execution of the fine pending an expedited appeal before this court.

Just days before filing their opening brief, Appellants informed the Government that the Corporation had fallen on hard financial times and fired all of its employees other than Doe. In their place, it hired independent contractors to assist Doe in operating his medical practice. Among other duties, the independent contractors were tasked with "[m]aint[aining] accurate and complete medical records, kept in accordance with HIPAA and Patient Privacy standards," and assisting with billing practices. However, before the Government filed its response, due to its discovery of a potential procedural defect,

4

we summarily vacated the contempt order and remanded the matter to the District Court.

The Government then filed a new subpoena that repeated the demands made in the first subpoena. As the government indicates, the "new subpoena was intended to place the parties in the same position as the previous subpoena," and the request in the new subpoena was limited to documents that had been subject to the initial subpoena. (Gov't Br. at 9.) The Government filed a motion to compel, Appellants opposed, and the District Court held another hearing, albeit a less extensive one given that the parties agreed not to rehash the arguments they had made prior. The District Court did, however, address Appellants' new submission regarding the fact that the Corporation no longer employed anyone other than Doe and was now operated by independent contractors.

Despite this factual development, the District Court granted the Government's motion to compel and found the Corporation to be in contempt, concluding (1) that even a one-person corporation cannot assert a Fifth Amendment privilege regarding corporate documents, and (2) the subpoena was not overbroad in violation of the Fourth Amendment. The Court found the Corporation to be in civil contempt, and entered a sanction of $2,000 per day, which it ordered stayed pending the outcome of this appeal.

## II.

We have jurisdiction over this appeal pursuant to 28

5

U.S.C. § 1291. We review the District Court's decision to quash a grand jury subpoena for abuse of discretion. *In re Impounded*, 241 F.3d 308, 312 (3d Cir. 2001). In so doing, we exercise plenary review over the District Court's legal rulings and clear error review of its factual determinations. *In re Grand Jury*, 286 F.3d 153, 157 (3d Cir. 2002).

## III.

A. <u>The Subpoena Does Not Violate Doe's Fifth Amendment Rights</u>

The subpoena requires Doe, in his capacity as custodian for his Medical Practice, to produce potentially incriminating information. There is no dispute that, ordinarily, corporations like the Medical Practice are not entitled to invoke the Fifth Amendment's privilege against self-incrimination. Nor is there any dispute that custodians of records for corporate entities are, typically, not entitled to invoke the privilege. Nonetheless, Appellants emphasize that, as a sole practitioner in a corporation with no other employees, Doe alone has control over the content and location of business records. They argue that, as a result, a jury will inevitably conclude that he produced any incriminating documents, and that the subpoena therefore violates his Fifth Amendment rights. Because we disagree, we conclude that the District Court did not abuse its discretion by refusing to quash the subpoena on this ground.

<u>Supreme Court Precedent</u>
Appellants' argument primarily hinges on two Supreme

6

Court cases: *Bellis v. United States*, 417 U.S. 85 (1974), and *Braswell v. United States*, 487 U.S. 99 (1988). In *Bellis*, the Supreme Court held that a partner in a law firm could not invoke his Fifth Amendment privilege against self-incrimination to avoid a subpoena seeking partnership records. 417 U.S. at 87. In so holding, the Court noted its "long line of cases" adhering to the collective entity doctrine, which states that "an individual cannot rely on the [Fifth Amendment] privilege to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Id.* at 88. "Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, the Court found that it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege." *Id.* at 90. The Court noted its "consistent view that the privilege against compulsory self-incrimination should be 'limited to its historic function of protecting only the natural individual from compulsory incrimination through his own testimony or personal records." *Id.* (quoting *United States v. White*, 322 U.S. 694, 701 (1944)).

Despite the Court's holding in *Bellis*, Appellants emphasize a particular paragraph from the decision, stating that the "[Fifth Amendment] privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life." *Id.* at 87-88. They assert that the Court intended to distinguish between a partnership involving multiple individuals, and a solo practice such as the

Corporation, where Doe, alone, has control over the content and location of the business records. This is incorrect.

In fact, as the Government argues, and as the remainder of the opinion makes clear, the Court, in the paragraph in question, is referring to *unincorporated* solo practitioners and sole proprietors. After noting that individuals such as sole practitioners may claim the privilege, the Court states, "on the other hand," that custodians of records of a collective entity may not rely on the Fifth Amendment privilege to avoid production they are required to make in their representative capacity of that entity. *Id.* at 88. As the Court explained, "In view of the inescapable fact that an artificial entity can only act to produce its records through its individual officers or agents, recognition of the individual's claim of privilege with respect to the financial records of the organization would substantially undermine the unchallenged rule that the organization itself is not entitled to claim any Fifth Amendment privilege." *Id.* at 90. Thus, the Court drew a line between incorporated and unincorporated persons, not between solo practitioners and multi-member corporations.

Nor is there merit to Doe's argument that, as a sole practitioner, the Corporation is merely his alter ego. The petitioner in *Bellis* had also asserted that due to the modest size of his partnership, it was unrealistic to consider the firm as an entity independent of its three partners. Soundly rejecting this argument, the Court emphasized that the size of the organization was immaterial, noting that "we do not believe the Court's formulation . . . can be reduced to a simple proposition based solely on the size of the organization. It is

8

well settled that no privilege can be claimed by the custodian of corporate records, *regardless of how small the corporation may be*." *Id.* at 100 (emphasis added).

Somewhat presciently, the Court largely dismissed the distinction between professional associations and partnerships for Fifth Amendment purposes, noting that

> [e]very state has now adopted laws permitting incorporation of professional associations, and increasing numbers of lawyers, doctors, and other professionals are choosing to conduct their business affairs in the corporate form rather than the more traditional partnership. Whether corporation or partnership, many of these firms will be independent entities whose financial records are held by a member of the firm in a representative capacity. In these circumstances, the applicability of the privilege should not turn on an insubstantial difference in the form of the business enterprise.

*Id.* at 100-01. In so doing, the Court placed professional associations and partnerships on equal footing and took for granted that, assuming aspects of the corporate form were respected, the Fifth Amendment privilege would be unavailable to custodians of such entities.

It is therefore clear that, in applying the collective entity doctrine, it is not the size or the type of corporation that matters. Rather, as the Supreme Court has explained, to

determine whether an individual is entitled to invoke his or her Fifth Amendment privilege, courts must determine whether the entity in question is "an established institutional identity independent of its individual partners," and not merely a loose informal association or some temporary arrangement. *Id.* at 95-96. The corporation must "maintain a distinct set of organizational records, and recognize rights in its members of control and access to them." *Id.* at 93. And finally, "the records subpoenaed must in fact be organizational records held in a representative capacity," such that it is "fair to say that the records demanded are the records of the organization rather than those of the individual." *Id.* Here, there is no serious dispute that the Medical Practice, established as a professional association in 1973 and operating as such for over forty-one years, possesses an institutional identity independent of Doe and maintains business records that, in no way, constitute Doe's personal papers. *Bellis*, therefore, undermines rather than supports Appellants' position.

Appellants next rely on *Braswell v. United States*, 487 U.S. 99 (1988). There, the petitioner, Braswell, was president and sole shareholder of two corporations. He also served as those corporations' custodian of records. The corporations each had only three directors, and Braswell argued that they were so small, they constituted nothing more than his alter egos. Applying this logic, he attempted to resist a subpoena by invoking his Fifth Amendment privilege against self-incrimination. Specifically, Braswell relied on the Supreme Court's decisions in *Fisher v. United States*, 425 U.S. 391 (1976), and *United States v. Doe*, 465 U.S. 605 (1984), in which the Court had seemingly strayed from the collective

10

entity rule and recognized that the "act of producing evidence in response to a subpoena has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the [individual producing them]." *Braswell*, 487 U.S. at 103 (quoting *Fisher*, 425 U.S. at 410).

Unlike the collective entity doctrine, which states that the contents of the subpoenaed business records are not privileged, the so called act-of-production doctrine is less concerned with the nature of the entity that owns the documents, and more concerned with the communicative or non-communicative nature of the disclosures sought to be compelled. *Id.* at 102, 109; *see also United States v. Hubbell*, 530 U.S. 27, 49 (2000) (Thomas, J., concurring) (act-of-production doctrine "provides that persons compelled to turn over incriminating papers or other physical evidence pursuant to a subpoena *duces tecum* or a summons may invoke the Fifth Amendment privilege against self-incrimination as a bar to production only where the act of producing the evidence would contain 'testimonial' features."). Braswell argued, as Appellants do here, that because only he had any authority over the business affairs of the corporations, the very act of producing documents contained testimonial aspects regarding the existence and authenticity of the documents produced. *Braswell*, 487 U.S. at 101-02.

The Supreme Court rejected Braswell's arguments in favor of a robust application of the collective entity rule, and again declined to carve out an exception to the rule based on

11

the size of the corporation.  As it had done in *Bellis*, the Court noted the collective entity rule's "lengthy and distinguished pedigree."  *Id.* at 104.  "[P]etitioner has operated his business through the corporate form, and we have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals."  *Id.* After conducting a brief survey of cases in this area, the Court reaffirmed that the "plain mandate of these decisions is that without regard to whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian, a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds."  *Id.* at 109.

The Court in *Braswell* did, however, caution that "certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity."  *Id.* at 117.  The Government is therefore prohibited from making any evidentiary use of the "individual act" against the custodian.  This is because when the custodian produces documents pursuant to a subpoena issued to the corporation, he or she acts as a representative, and the act is deemed one of the corporation, not the individual.  *Id.* at 118. It is permitted, however, to use the corporation's act of production against the custodian.  *Id.*

As evidenced by its opinions in *Bellis* and *Braswell*, the Court has been steadfast in its conclusion that the Fifth Amendment privilege against self-incrimination is unavailable

12

to corporate custodians.[1]   Having taken advantage of the benefits of incorporation for over forty years, Doe may not discard the corporate form simply because he now finds it desirable to do so.  *See Bellis*, 417 U.S. at 88 (noting that it is of no import that the custodian, in producing corporate records that are in his possession in a representative capacity, may also personally incriminate himself).

Despite the Supreme Court's broad, and largely unqualified, ruling in *Braswell* that corporate custodians may not claim a Fifth Amendment privilege, it did, in a footnote, leave open the question of "whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records."  *Braswell*, 487 U.S. at 118 n.11.  But whatever circumstances were contemplated by the Court, this

---

[1] Appellants argue that the Supreme Court has demonstrated an increasing proclivity to extend a greater degree of protection to corporate entities.  *See, e.g., Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 365 (2010); *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014).  Whatever merit there may be to Appellants' general observation, we discern nothing in Supreme Court jurisprudence that suggests the Court has, in any way, signaled its readiness to depart from its longstanding precedent regarding corporate custodians' inability to invoke the Fifth Amendment privilege against self-incrimination.

footnote in no way detracts from its holding that a custodian may not resist a subpoena for corporate records on the ground that the act of production might incriminate him. *Id.* at 119.

Moreover, we express serious doubt as to whether footnote 11 in *Braswell* even applies to Doe's situation. It is hard to imagine a jury "inevitably" concluding that he produced the records when the records were created while the Corporation employed other staff besides Doe and while he utilizes the services of independent contractors whose responsibilities include "[m]aint[aining] accurate and complete medical records, kept in accordance with HIPAA and Patient Privacy standards" and assisting with billing practices. (App. 187.)

Third Circuit Precedent

Appellants further rely on our decisions in *In re Grand Jury Matter (Brown)*, 768 F.2d 525 (3d Cir. 1985) (en banc) and *Matter of Special Federal Grand Jury Empanelled October 31, 1985 Impounded*, 819 F.2d 56 (3d Cir. 1987). But these decisions predate the Supreme Court's ruling in *Braswell* and do not adequately consider the collective entity rule's application.

In *In re Grand Jury Matter (Brown)*, we interpreted the Supreme Court's decisions in *Fisher* and *Doe* as "mak[ing] the significant factor, for the privilege against self-incrimination, neither the nature of the entity which owns the documents, nor the contents of the documents, but rather the communicative or noncomunicative nature of the arguably incriminating

14

disclosures sought to be compelled." *Braswell*, 487 U.S. at 109 (quoting *In re Grand Jury Matter (Brown)*, 768 F.2d at 528)). Our decision in *Matter of Special Federal Grand Jury Empanelled October 31, 1985 Impounded* relied on our *Brown* decision and similarly applied this reasoning. 819 F.2d at 58.

The Supreme Court disagreed. While acknowledging that *Fisher* and *Doe* "embarked upon a new course of Fifth Amendment analysis," it rejected the notion suggested by our precedent that such analysis "rendered the collective entity rule obsolete." *Braswell*, 487 U.S. at 109. Rather, it concluded that "the agency rationale undergirding the collective entity decisions, in which custodians asserted that production of entity records would incriminate them personally, survives." *Id.* As a result, to the extent our precedents suggest that the act-of-production doctrine somehow rendered the collective entity rule inferior or obsolete, they were overruled by the Court's decision in *Braswell*.

Precedent From Other Circuits

Our conclusion today comports with precedent from several other circuits that have considered the issue, all of which have agreed that a corporate custodian may not refuse to comply with a subpoena on Fifth Amendment grounds merely because he or she is also that corporation's sole owner and employee. *See In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158-59 (2d Cir. 2010); *Amato v. United States*, 450 F.3d 46, 53 (1st Cir. 2006); *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992), *cert. denied*, 507 U.S. 1029

15

(1993).

As the Second Circuit aptly explained, this result is the "sensible" one.

> First, it prevents the erosion of the unchallenged rule that the [corporation] itself is not entitled to claim any Fifth Amendment privilege. Second, it recognizes that the decision to incorporate is freely made and generates benefits, such as limited liability, and burdens, such as the need to respond to subpoenas for corporate records. Third, it avoids creating a category of organizations effectively immune from regulation by virtue of being beyond the reach of the Government's subpoena power.

*In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158-59 (quotation marks and internal citation omitted) (alteration in original). Indeed, as the Fourth Circuit noted, a one-person operation "is still a corporation, a state law-regulated entity that has a separate legal existence from [the target of the subpoena] shielding him from its liabilities. The business could have been formed as an unincorporated sole proprietorship and production of its business records protected by the privilege against self-incrimination." *Stone*, 976 F.2d at 912. But the individual, like Doe here, instead "chose the corporate form and gained its attendant benefits, and we hold . . . that he cannot now disregard the corporate form to shield his business records from production." *Id.* Given that we find Appellants have advanced no persuasive rationale as to why

16

the reasoning of *Bellis* and *Braswell* does not apply to one-person corporations like that operated by Doe, we hold that the collective entity doctrine applies to the Medical Practice, such that Doe may not rely on the Fifth Amendment to avoid compliance with the subpoena.[2]

---

[2] Appellants argue that, in accordance with the Supreme Court's decision in *United States v. Hubbell*, 530 U.S. 27 (2000), they do not have to comply with the subpoena because *Hubbell* recognized that compelled production of documents can be testimonial to the extent the production communicates statements of fact. *See Hubbell*, 530 U.S. at 36. Appellants assert that because the Government's document requests require him, as custodian, to identify sources of information, the document requests are more akin to an interrogatory or oral deposition. Such production, they continue, violates Doe's Fifth Amendment. This misconstrues the Court's decision. First, there is no reason to suspect that *Hubbell* altered, in any way, the analysis set forth in *Braswell*. The Supreme Court did not mention, much less revisit, the collective entity rule and cited *Braswell* only in a footnote for the proposition that the act of producing subpoenaed documents may have some protected testimonial aspects.

17

B.    The Subpoena is Not Overbroad in Violation of the Fourth Amendment

Appellants also argue that the subpoena was overbroad and lacked particularity, in violation of the Fourth Amendment.   The Fourth Amendment "provides protection

---

Second, *Hubbell*'s recognition that a custodian's act of production may contain protected testimonial aspects is not necessarily at odds with *Braswell*.   The *Braswell* Court recognized the testimonial aspect of the act of production, but found it an insufficient basis to override the longstanding principle that corporate custodians are not entitled to resist a subpoena for corporate records on Fifth Amendment grounds. *See Braswell*, 487 U.S. at 112 (concluding that although *Bellis* did not focus on the testimonial aspect of the act of production, "such a focus would not have affected the results reached" because it is "well settled that no privilege can be claimed by the custodian of records.") (internal quotation marks and citation omitted).   And, in an effort to safeguard the these protected testimonial aspects, the Court placed certain evidentiary limitations on the Government to prevent it from using the custodian's act in a subsequent criminal proceeding against him or her.   *See id.* at 117-18. Accordingly, we conclude that *Hubbell* does not provide a justification for Doe's refusal to comply with the subpoena. *See also Armstrong v. Guccione*, 470 F.3d 89, 98 (2d Cir. 2006) (rejecting "any suggestion that Hubbell so undermined Braswell that we are no longer compelled to follow its holding.").

18

against a grand jury subpoena *duces tecum* too sweeping in its terms to be regarded as reasonable." *United States v. Dionisio*, 410 U.S. 1, 11 (1973). However, the Supreme Court, in remarking on the "unique role in our criminal justice system" that the grand jury occupies, has noted that as a "necessary consequence of its investigatory function, the grand jury paints with a broad brush." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991). Moreover, grand juries' powers must be broad, given that "the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists. *Id.*

Here, citing no case law, Appellants seek to cast the subpoena as overly broad because it "sweeps within its purview documents and information with no possible nexus to the stated investigation." (App. Br. at 34.) They argue that its request for information relative to third parties having nothing to do with the OTE is impermissible. We disagree. The Supreme Court has cautioned that "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *R. Enterprises, Inc.*, 498 U.S. at 300-01. And, where a subpoena is challenged on relevancy grounds, as Appellants do here, "the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 301. As the District Court noted, arrangements between the professional association and third parties could be disguised

kickbacks and patients' records might reflect that blood specimens had been impermissibly ordered or taken. Under these circumstances, the District Court did not abuse its discretion in concluding that the category of materials identified in the subpoena could reasonably produce information relevant to the Government's investigation.

## IV.

For the foregoing reasons, we affirm the District Court's order entered on November 20, 2014.