# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CHARLES DAVID WOOD, JR., and DNIC )
INSURANCE HOLDINGS, INC., individually and )
derivatively on behalf of LONESTAR HOLDCO, )
LLC; and FREESTONE INSURANCE COMPANY )
IN LIQUIDATION, through its Receiver, )
                                                       )
                  Plaintiffs, )
                                                       )
                  v. )    C.A. No. 2017-0034-JTL
                                                         )
U.S. BANK NATIONAL ASSOCIATION, U.S. )
BANK TRUST NATIONAL ASSOCIATION, )
ALEXANDER BURNS, SOUTHPORT LANE )
MANAGEMENT, LLC, SOUTHPORT LANE, )
L.P., SOUTHPORT LANE ADVISORS, LLC, )
SOUTHPORT LANE SECURITIES, LLC, )
SOUTHPORT INTERMEDIARIES, LLC, )
SOUTHPORT RE, LLC, SOUTHPORT LANE )
GENESIS L.P., SOUTHPORT INSURANCE )
HOLDINGS, LLC, SOUTHPORT SPECIALTY )
FINANCE, LLC, SOUTHPORT ASSET )
FINANCE, LLC, SOUTHPORT EQUITY I, LLC, )
THE DALMORE GROUP, LLC, DALMORE )
FINANCIAL, LLC, ADMINISTRATIVE )
AGENCY SERVICES, LLC, HEARTLAND )
FAMILY GROUP, LLC, GLENN WEBER, )
DARREN FORTUNATO, and JOEL PLASCO, )
                                                       )
                  Defendants, )
                                                       )
             and )
                                                         )
LONESTAR HOLDCO, LLC, )
                                                       )
                  Nominal Defendant. )

## OPINION

Date Submitted: January 13, 2021
Date Decided: February 4, 2021

Michael W. Teichman, Elio Battista, Jr., Judy M. Jones, PARKOWSKI, GUERKE & SWAYZE, P.A., Wilmington, Delaware; Eric P. Haas, GARDNER HAAS PLLC, Dallas, Texas; *Attorneys for Plaintiffs*.

Paul D. Brown, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington Delaware; William B. Kerr, KERR, LLP, New York, New York; *Attorneys for Defendants Alexander Burns and Heartland Family Group, LLC*.

**LASTER, V.C.**

Through Heartland Family Group, LLC, Alexander Burns controlled Southport Lane, L.P., and its affiliates (the "Southport Entities"). Using Lonestar Holdco LLC, the Southport Entities acquired two companies: Redwood Reinsurance SPC, Ltd., and Freestone Insurance Company.

The plaintiffs contend that beginning in 2013, Burns and Heartland orchestrated a series of interested transactions through which they caused the Southport Entities to exchange valuable assets held by Freestone and Redwood for less valuable or valueless ownership interests in other entities that Burns and Heartland controlled, such the Destra Targeted Income Unit Investment Trusts (the "Challenged Transactions"). The plaintiffs maintain that the Challenged Transactions eventually rendered Redwood and Freestone insolvent. Through this action, the plaintiffs seek to recover damages from Burns, Heartland, and the other defendants.

In December 2019, the plaintiffs served requests for production of documents on Burns and Heartland. In January 2020, Burns and Heartland served responses. As to every request, they invoked "their rights and privileges under the United States Constitution, including the Fifth Amendment."

In February 2020, plaintiffs provided authorities demonstrating that the objection was not well taken and sought to confer on a path forward. In June, July, August, and September, Burns and Heartland promised to amend their responses and produce documents. Those promises proved empty.

Meanwhile, in July 2020, the plaintiffs served interrogatories and requests for admissions on Burns and Heartland. In September, Burns and Heartland promised to respond in October. That promise also proved empty.

On October 23, 2020, plaintiffs moved to compel the production of documents and responses to interrogatories. Prompted by that motion, Burns and Heartland served amended responses to the document requests. In December, Burns and Heartland claimed they had not refused to produce documents and had asserted more limited objections. Their responses do not bear that out.

Burns and Heartland still have not responded to the interrogatories or requests for admissions. They claim to have prepared responses, but moved for a retroactive extension in the time to respond so that Burns and Heartland would not (i) have waived their objections to the interrogatories by failing to serve responses for over seven months and (ii) be deemed to have admitted the subjects addressed in the requests for admissions by failing to provide timely responses. Forwarding counsel claims that any delays were due to his difficulties practicing during the COVID-19 pandemic. Delaware counsel has remained silent.

Fact discovery closes on February 26, 2021. At this point, Burns and Heartland have almost run out the clock. This decision grants the plaintiffs' motion to compel and denies the motion for a retroactive extension.

# I. THE SELF-INCRIMINATION CLAUSE

The principal issue in dispute is Burns and Heartland's reliance on the Fifth Amendment. This court's decisions do not shed light on how to apply the Fifth Amendment to requests for production of documents in a civil case.

The Self-Incrimination Clause in the Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. "The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals." *United States v. White*, 322 U.S. 694, 698 (1944). "[A]rtificial entities are not protected by the Fifth Amendment." *Braswell v. United States*, 487 U.S. 99, 102 (1988).

Just as an artificial entity may not invoke the Self-Incrimination Clause, a "long line of cases has established that an individual cannot rely upon the [clause] to avoid producing the records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally." *Bellis v. United States*, 417 U.S. 85, 88 (1974). Known as the "collective entity doctrine," this rule applies regardless of whether the subpoena or request for production is directed to the entity or to the individual in his capacity as a custodian of the entity's records. *See Braswell*, 487 U.S. at 104, 108–09. In either case, the individual "may not resist a subpoena . . . on Fifth Amendment grounds." *Id.* at 109. In other words, "[a]n individual cannot claim the Fifth Amendment privilege with regard to business records, even if they are in his own possession." *Doe v. Somerset*, 2019 WL 3564175, at *3 (Del. Super. Aug. 2, 2019).

In this case, the plaintiffs' requests for production of documents contained thirty-seven requests directed to Burns and Heartland. In response to all but seven requests, Burns and Heartland invoked the Fifth Amendment. As to the other seven requests, they responded with one word: "None."

In response to eight requests, Heartland claimed not to possess any documents, and Burns refused to produce documents based the Self-Incrimination Clause. Those requests were as follows:

- Request 15: "All documents and communications concerning the transfer, movement, or flow of funds or securities into or out of the following [six identified] U.S. Bank accounts between January 1, 2012 and April 30, 2014."

- Request 18: "All documents concerning the formation, creation, issuance, registration and/or authentication of any Destra investments, units, or securities."

- Request 19: "All documents concerning the valuation, certification, reporting and/or validity of any Destra investments, units, or securities."

- Request 20: "All documents concerning the net asset value(s) of any Destra investments, units, or securities."

- Request 21: "All documents concerning the sale, transfer and/or exchange of any Destra investments, units, or securities."

- Request 22: "All documents concerning the identification, ownership and/or valuation of any assets owned, directly or indirectly, by any Destra trust."

- Request 28: "All communications between October 22, 2013 and April 30, 2014, concerning the transfer, sale, exchange, or valuation of any assets owned, controlled, or held by Freestone, Redwood, Lonestar, Destra, Constellation, Imperial, Tower, or any of the Southport Entities."

- Request 29: "Documents sufficient to identify each U.S. Bank account owned, controlled, or managed by any of the Southport Entities, Dalmore, Destra, Freestone, Redwood, Lonestar, White Rock, FSP Capital, Constellation, Alexander Burns, Kevin Adler, Andrew Scherr, Robert McGraw, and/or Michael Morrow between January 1, 2013 and April 30, 2014."

Dkt. 287 Ex. 3. These requests seek business records of Heartland to which the Self-Incrimination Clause does not apply. To the extent that Burns has responsive documents, he holds them as a custodian of Heartland, not in his personal capacity. Burns' invocation of the Self-Incrimination Clause in response to these requests is thus overruled.

In response to another twenty-two of the requests, Burns and Heartland committed to produce only those documents "not otherwise subject to Burns' right to invoke the Fifth Amendment of the United States Constitution." *See* Dkt. 287 Ex. 3 ¶¶ 6–14, 16, 23–25, 27, 30–37. The tenor of these requests is similar to those listed above. The requests seek business records of Heartland to which the Self-Incrimination Clause does not apply. To the extent that Burns has responsive documents, he holds them as a custodian of Heartland, not in his personal capacity. Here too, Burns' invocation of the Self-Incrimination Clause is overruled.

## A.    The Single-Person-Entity Exception

Burns argues that the collective entity doctrine does not apply in this case because he is the sole member of Heartland. The idea that a single-person entity might not be subject to the collective entity doctrine is traceable to *United States v. Doe*, 465 U.S. 605 (1984). There, the Supreme Court of the United States held that "the owner of a sole proprietorship acts in a personal rather than a representative capacity" when responding to a subpoena and accordingly could invoke the Self-Incrimination Clause. *Id.* at 608. In *Doe*, however, the sole proprietor operated his business through "an *unincorporated* sole proprietorship." *Id.* at 607 n.2 (emphasis added).

5

Four years later, the Supreme Court of the United States revisited *Doe* in a case where the sole stockholder of a corporation invoked the Self-Incrimination Clause to withhold corporate books and records. *Braswell,* 487 U.S. at 104. The *Braswell* decision emphasized the distinction between an unincorporated sole proprietorship and an individual acting on behalf of an incorporated entity:

> Had petitioner conducted his business as a sole proprietorship, *Doe* would require that he be provided the opportunity to show that his act of production would entail testimonial self-incrimination. But petitioner has operated his business through the corporate form, and we have long recognized that, for purposes of the Fifth Amendment, corporations and other collective entities are treated differently from individuals.

*Id.* In a footnote, the Court left "open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records." *Id.* at 118 n.11.

Although the Supreme Court of the United States declined to address this issue in *Braswell*, the overwhelming weight of federal decisions from the courts of appeals recognizes that the collective entity doctrine applies with equal force to a single-person entity. The United States Court of Appeals for the First Circuit has held that "the sole shareholder of a one-man corporation has no 'act of production privilege' under the [F]ifth [A]mendment to resist turnover of corporate documents." *In re Grand Jury Proceedings (The John Doe Co., Inc.)*, 838 F.2d 624, 627 n.3 (1st Cir. 1988). The court explained that the choice to incorporate brings with it "all the attendant benefits *and responsibilities* of

6

being a corporation," including the responsibility "to produce and authenticate records of the corporation . . . ." *Id.* at 627. In another decision, the same court explained that

> even assuming [the entity] to be a one-man corporation and [the custodian] to be that one man, the corporate records are not shielded from production, nor may [the custodian] resist a subpoena for those records on the ground that the act of production would impermissibly infringe on his Fifth Amendment right against self-incrimination.

*United States v. Lawn Builders of New Eng. Inc.*, 856 F.2d 388, 394 (1st Cir. 1988); *accord Amato v. United States*, 450 F.3d 46, 53 (1st Cir. 2006). Every other circuit court that has considered this issue has reached the same conclusion.[1]

Burns and Heartland maintain that the collective-entity doctrine should not apply to a single-member LLC, but that argument lacks force. The principal factor that courts use when determining whether to apply the collective entity doctrine is whether the organization is a juridical entity with separate legal existence.[2] Case law discussing the

---

[1] *See In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 527 (9th Cir. 2018) (holding that sole shareholder or sole employee of corporation or LLC may not "invoke the Fifth Amendment privilege against self-incrimination to resist producing those collective entities' documents" because "the size of the collective entity . . . [is] not relevant"; "All of our sister circuits to consider this issue have reached the same conclusion."), *cert. denied*, 140 S. Ct. 289 (2019); *accord In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010); *Grand Jury*, 786 F.3d at 258; *United States v. Stone*, 976 F.2d 909, 912 (4th Cir. 1992); *In re Custodian of Recs. of Variety Distrib., Inc.*, 927 F.2d 244, 247 (6th Cir. 1991); *see also Bellis*, 417 U.S. at 100 ("[N]o privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be.").

[2] *See Bellis*, 417 U.S. at 95 (examining whether the entity had an "established institutional identity independent of its individual [constituents]"); *see also Twelve Grand Jury*, 908 F.3d at 529 (drawing no distinction between "one-person corporations" and "LLCs").

7

collective entity doctrine draws a line "between incorporated and unincorporated persons."[3]

The Delaware Uniform Limited Liability Act (the "LLC Act") makes clear that an LLC has a separate juridical existence distinct from its members. 6 *Del. C.* § 18-201(b). The LLC Act also makes clear that an LLC need only have one member. *See id.* § 18-101(8). "This means that the [LLC] has an existence recognized by law as distinct from that of its members and others just as a corporation is recognized as having a legal existence separate and apart from its stockholders." Robert L. Symonds, Jr. & Matthew J. O'Toole, *Delaware Limited Liability Companies* § 2.05, at 2-20 (2019). Burns and Heartland are

---

[3] *In re Grand Jury Empaneled on May 9, 2014*, 786 F.3d 255, 259 (3d Cir. 2015) (discussing *Bellis*, 417 U.S. at 90). Although the separate juridical status of the entity prevents a document custodian from relying on the Self-Incrimination Clause, the absence of separate juridical status does not mean that an individual can rely on the Self-Incrimination Clause. The Supreme Court of the United States has held that when an unincorporated organization is a collective entity with many members, then a document custodian for that entity can be compelled to produce documents and cannot invoke the Self-Incrimination Clause. *See White*, 322 U.S. at 701. The *White* decision framed the overarching inquiry as follows:

> The test . . . is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only. If so, the privilege cannot be invoked on behalf of the organization or its representatives in their official capacity.

*Id.* at 701. In *White*, the Court held that "[l]abor unions—national or local, incorporated or unincorporated—clearly meet that test." *Id.*

distinct for purposes of the Self-Incrimination Clause. The collective entity doctrine therefore applies, notwithstanding the fact that Heartland is a single-person entity.

## B.        The Act-Of-Production Doctrine

Burns also invokes what is known as the act-of-production doctrine. This doctrine recognizes that the Self-Incrimination Clause applies "when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). The act of producing evidence can have a testimonial dimension if that act "has communicative aspects of its own." *Id.* at 410.

The Supreme Court of the United States has explained that the act-of-production doctrine rarely applies when an individual produces documents on behalf of an entity:

> [T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative rather than a personal capacity. Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand . . . . Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation. Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation—which of course possesses no such privilege.

*Braswell*, 498 U.S. at 109–10 (citation omitted). "Since no artificial organization may utilize the personal privilege against compulsory self-incrimination, . . . it follows that an individual acting in his official capacity on behalf of the organization may likewise not take advantage of his personal privilege." *Bellis*, 417 U.S. at 90.

Under these precedents, Burns cannot invoke the act-of-production doctrine. The requests seek business records and related documents. To the extent that Burns possesses

9

records, he holds them as a custodian of Heartland. He therefore may not take advantage of his personal privilege against self-incrimination to avoid production.

In the unlikely event that Burns were to produce documents in his personal capacity, his invocation of the Self-Incrimination Clause nevertheless would fail because he has not made any attempt to show how the act of production could be incriminating. *See Grand Jury Subpoena*, 973 F.2d at 51 (rejecting act-of-production argument because proponent "failed to address" how the act of production would be testimonial and self-incriminating). And based on the requests themselves, it is not apparent how Burns could make such a showing. The requests do not seek any categories of documents that are inherently incriminating; they seek documents relating to the Challenged Transactions. The parties agree that the Challenged Transactions (whether or not proper) took place, and business transactions almost always are documented in some form. The mere existence of documents relating to the Challenged Transactions is not incriminating. Accordingly, production could not be regarded as making any type of incriminating testimonial statement or admission.

Burns also argues that the act of producing the records would provide some testimonial indication as to their authenticity. But the Supreme Court of the United States has held that a custodian can be compelled to testify as to the authenticity of corporate records: "[A] corporate officer who has been required by subpoena to produce corporate documents may also be required, by oral testimony, to identify them . . . ." *Curcio v. United States*, 354 U.S. 118, 125 (1957). Such testimony is ancillary to the act of producing the records. *E.g.*, *United States v. Austin-Bagley Corp.*, 31 F.2d 229, 234 (2d Cir. 1929)

10

("[T]estimony auxiliary to the production is as unprivileged as are the documents themselves."), *cert. denied*, 279 U.S. 863 (1929). This decision has already held that the Self-Incrimination Clause does not enable Burns to withhold the corporate documents that the plaintiffs seek. Burns therefore could be compelled to authenticate those documents as corporate records. It follows that any testimonial statement or admission resulting from the production of those documents does not violate the Self-Incrimination Clause.

## II.     OTHER OBJECTIONS

In addition to relying on the Self-Incrimination Clause, Burns and Heartland raised an assortment of general objections to producing documents. Those objections are overruled.

When a party objects to providing discovery, "[t]he burden . . . is on the objecting party to show why and in what way the information requested is privileged or otherwise improperly requested." *Van de Walle v. Unimation, Inc.*, 1984 WL 8270, at *2 (Del. Ch. Oct. 15, 1984). Generic and formulaic objections "are insufficient." *Id.* (internal quotation marks omitted). For an objecting party to carry its burden,

> the objection must be specific, the party making it must explain why it applies on the facts of the case to the request being made, and if the party is providing information subject to the objection, the party must articulate how it is applying the objection to limit the information it is providing.

*In re Oxbow Carbon LLC Unitholder Litig.*, 2017 WL 959396, at *3 (Del. Ch. Mar. 13, 2017) (collecting authorities); *accord Van de Walle*, 1984 WL 8270, at *2 ("Objections should be plain enough and specific enough so that the Court can understand in what way [the discovery is] claimed to be objectionable." (quoting 4A *Moore's Federal Practice* §

11

33.27, at 33-164 to 33-167)). "[B]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Oxbow*, 2017 WL 959396, at \*2 (internal quotation marks omitted) (collecting authorities).

Burns and Heartland raised a series of broad, generic, and formulaic objections which they invoked only to the extent that the objections might apply, without explaining whether or how they in fact applied or to what extent Burns and Heartland were using them to limit their responses. The general objections included the following:

- "Defendants object to the Definitions and the Instructions *to the extent* they impose greater requirements than Delaware law or the Rules of the Court of Chancery."

- "Defendants object to the Requests *to the extent* they seek discovery of material not in the possession, custody or control of Defendants, or that is already in Plaintiffs' possession, custody or control."

- "Defendants object to each Request *to the extent* such Request is duplicative of other Requests."

- "Defendants object to the Requests *to the extent* they seek documents that are not relevant to the subject matter involved in the pending action or otherwise not proportional to the needs of the case."

- "Defendants object to the Requests *to the extent* they are overly broad and unduly burdensome, and in particular any Request that calls for the production of 'all documents' and/or 'all communications' in a particular category."

Dkt. 287 Ex. 3 (emphasis added). These objections serve only to obfuscate and confuse. They are overruled.

Burns and Heartland also lodged a general objection to the phrase "relating to," contending that "such phrase is inherently overbroad and potentially encompasses an enormous number of irrelevant or inadmissible materials, including documents, communications, and materials that are protected by the attorney-client and work-product

12

privileges." Dkt. 287 Ex. 3 ¶ G. Burns and Heartland supported this assertion by citing Rule 26(b) and three decisions from federal district courts in other jurisdictions.

In this court, requests for documents "relating to" a particular topic are customary. The term itself is not objectionable. A request might use this formulation in an overly broad or unduly burdensome manner, but the objecting party must then respond by explaining its objection with specificity and proposing a reasonable narrowing of the request. Burns and Heartland did neither of these things. Their objection is therefore overruled.

Finally, Burns and Heartland object to the requests

[t]o the extent they seek disclosure of information protected by the attorney-client privilege, the attorney work product doctrine or any other applicable privilege or immunity, including Burn's right to invoke the Fifth Amendment of the United States Constitution.

Dkt. 287 Ex. 3 ¶ C. The reference to the unidentified possibility of some "other applicable privilege or immunity" is non-specific and non-substantive. The balance of the objection would have been acceptable if Burns and Heartland had provided a privilege log, but they did not. At this point, their claims of privilege are waived. *See Mechel Bluestone, Inc. v. James C. Justice Cos., Inc.*, 2014 WL 7011195, at *5 (Del. Ch. Dec. 12, 2014).

## III. THE INTERROGATORIES AND REQUESTS FOR ADMISSION

Burns and Heartland have waived any objections they might have to the interrogatories and requests for admissions. Under Rule 33(b), any objections to interrogatories are waived unless asserted within thirty days of service. Under Rule 36(a), if a party fails to answer or object to a request for admission within thirty days of service,

13

then the request is deemed admitted. It is undisputed that Burns and Heartland did not raise objections or provide responses within this timeframe.

Burns and Heartland have now moved to enlarge their time to respond retroactively, claiming that their failure to respond was due to excusable neglect. "The Court may grant a motion to extend the expired time for discovery if a movant shows its failure to complete discovery was an act of excusable neglect." *Wood v. Brian Collison & Dep't of Corr.*, 2014 WL 7149214, at \*3 (Del. Super. Dec. 12, 2014). "Excusable neglect is that neglect which might have been the act of a reasonably prudent person under the circumstances." *Battaglia v. Wilm. Sav. Fund Soc.*, 379 A.2d 1132, 1135 n.4 (Del. 1977). A court may provide additional time if the movant "demonstrates good cause, absent bad faith and undue prejudice to the other parties." *Wood*, 2014 WL 7149214, at \*3.

To establish excusable neglect, Burns and Heartland submitted a declaration of William B. Kerr, one of their attorneys. They did not offer any other declarations. The Kerr Declaration blamed the failure to respond on difficulties Kerr encountered in managing his practice during the COVID-19 pandemic. He averred that he could not respond to discovery because he was working remotely and inadvertently overlooked the fact that interrogatories and requests for admissions had been served. He also cited a backlog of work and the reopening of courts in New York.

The court is sympathetic to the additional burdens of practicing law during the COVID-19 pandemic. None of Kerr's averments, however, support a finding of excusable neglect. Each lawyer in this case, as well as the court, has been forced to deal with unforeseen obstacles and difficulties. Kerr delayed providing responses for six months.

14

During this time, he repeatedly represented to plaintiffs' counsel that he would provide answers on various dates, only to fail to live up to his commitments.

Kerr also has not explained why Delaware counsel did not provide the responses. "Even when forwarding counsel has been admitted *pro hac vice* and is taking a lead role in the case, the Court of Chancery does not recognize the role of purely 'local counsel.'" *James v. Nat'l Fin. LLC*, 2014 WL 6845560, at *12 (Del. Ch. Dec. 5, 2014). "The admission of an attorney *pro hac vice* shall not relieve the moving attorney from responsibility to comply with any Rule or order of the Court." Del. Ct. Ch. R. 170(b). "Our rules make clear that the Delaware lawyer who appears in an action always remains responsible to the Court for the case and its presentation." *State Line Ventures, LLC v. RBS Citizens, N.A.*, 2009 WL 4723372, at *1 (Del. Ch. Dec. 2, 2009). Delaware counsel could and should have assisted Kerr in keeping the case on track.

Given the amount of time that has passed, the plaintiffs would suffer unfair prejudice if Burns and Heartland now were permitted to assert objections and withdraw their deemed admissions. Discovery is about to close, and a number of depositions have already occurred. The motion for a retroactive extension of time to respond to the interrogatories and requests for admissions is denied.

## IV. CONCLUSION

This decision overrules Burns and Heartland's objections based on the Self-Incrimination Clause and their general objections to the production of documents. Burns and Heartland shall produce all documents responsive to the requests within fourteen days. The requests for admissions are deemed admitted. Burns and Heartland shall answer the

interrogatories in full, within fourteen days, and shall not raise any objections. After producing documents and answering the interrogatories, Burns shall appear for a second deposition. Under Rule 37, plaintiffs are awarded the reasonable expenses that they have incurred in obtaining this relief.